# STATE OF WEST VIRGINIA

# SUPREME COURT OF APPEALS

**PAT A. MEZZANOTTE,**
**Claimant Below, Petitioner**

**FILED**

**November 2, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)    No. 18-0487** (BOR Appeal No. 2052325)
                    (Claim No. 970060824)

**WEST VIRGINIA OFFICE OF**
**INSURANCE COMMISSIONER,**
**Commissioner Below, Respondent**

**and**

**EASTERN ASSOCIATED COAL, LLC,**
**Employer Below, Respondent**

## MEMORANDUM DECISION

Petitioner Pat A. Mezzanotte, by J. Thomas Greene, his attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. The West Virginia Office of the Insurance Commissioner, by Henry C. Bowen, its attorney, filed a timely response.

The issue on appeal is permanent partial disability. The claims administrator found that Mr. Mezzanotte was fully compensated by his prior 15% permanent partial disability award on August 18, 2015. The Office of Judges affirmed the decision in its November 9, 2017, Order. The Order was affirmed by the Board of Review on April 24, 2018. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

1

Mr. Mezzanotte, a coal miner, developed basal cell carcinoma as a result of occupational exposure to coal tar naphtha. In a March 14, 1997, letter, Lunda Lombardo, M.D., stated that she had examined Mr. Mezzanotte and found that his six year exposure to coal tar naphtha contributed to his development of basal cell carcinoma and defatting dermatitis. She believed that his peripheral neuropathy was the result of diabetes, not chemical exposure.

In an evaluation on March 14, 1997, Allen Ducatman, M.D., noted that Mr. Mezzanotte had a history of peripheral neuropathy and exposure to coal tar naphtha. He spent the first fourteen years of his coal mining job underground, being exposure to large amounts of coal dust, some alum, and some magnetite. The final six years were spent using the chemical naphtha to clean lamps. He maintained as many as forty-two lamps, requiring the use of about fifty-five gallons of naphtha a year. Mr. Mezzanotte did not use gloves and stated that he was nauseous and dizzy several times in the first year of maintaining the lamps. Dr. Ducatman opined that the peripheral neuropathy was not the result of exposure to naphtha. However, coal tar naphtha is a skin carcinogen, and he believed it was reasonable to find that Mr. Mezzanotte's exposure increased his risk for developing basic cell carcinomas. On examination, Mr. Mezzanotte had healing basal cell carcinomas on his right shoulder along with scars on both arms. He also had defatting dermatitis on the right wrist and skin changes on the right hand which was consistent with his exposure history. Dr. Ducatman opined that the basal cell carcinomas were related to Mr. Mezzanotte's coal tar naphtha exposure. The claim was held compensable for hypertrophic and atrophic skin conditions, malignant neoplasm of the skin of the upper limb, and contact dermatitis and other eczema due to solvents on August 28, 1997.

In a December 3, 1997, independent medical evaluation, Robert English, M.D., noted Mr. Mezzanotte's coal tar naphtha exposure, his basal cell carcinoma diagnosis, and his hyperkeratosis and dermatitis. Dr. English found, however, that Mr. Mezzanotte had areas of sun damage on his back, as well as a small lesion. He opined that the back lesion should be biopsied as it appeared to be basal cell carcinoma; however, due to its location, it was likely not the result of occupational naphtha exposure. Dr. English stated that Mr. Mezzanotte's basal cell carcinomas were developing on sun exposed skin and that he saw little relation between the carcinomas and his coal tar naphtha exposure. In an addendum, Dr. English opined that Mr. Mezzanotte had 10% impairment. The claims administrator granted a 5% permanent partial disability award on March 10, 1998. The Office of Judges reversed the decision on October 14, 2003, and granted a 10% award.

Charles Wentz, M.D., performed an independent medical evaluation on April 7, 2009, and indicated that Mr. Mezzanotte was treated for numerous lesions from 1997 through 2007. Dr. Wentz diagnosed multiple occurrences of basal cell carcinoma with residual scarring. He opined that Mr. Mezzanotte would likely develop more basal cell carcinomas in the future. He further opined that Mr. Mezzanotte's basal cell carcinomas were the result of exposure to naphtha. He found Mr. Mezzanotte to be at maximum medical improvement and placed him in Category 1 for skin disorders under the American Medical Association's *Guides to the Evaluation of Permanent Impairment*, (4th ed. 1993). He assessed 5% impairment for multiple lesions and 2% for the adjustment effects of treatment. These combined for a total of 7% impairment. Dr. Wentz disagreed with Dr. English's finding of 10% impairment because Dr.

English placed Mr. Mezzanotte in Category 2, which would require limitations in daily living. Dr. Wentz found no evidence that the basal cell carcinomas interfered with his activities of daily living.

Edward Doyle, M.D., performed an independent medical evaluation on January 12, 2010, in which he opined that Mr. Mezzanotte's exposure to coal tar naphtha played a major role in his development of multiple basal cell carcinomas. He placed Mr. Mezzanotte in Category 2 for skin disorders under the American Medical Association's *Guides* because he found that he had reduced activities of daily living due to the carcinomas. Mr. Mezzanotte had to avoid situations that could cause or aggravate the carcinomas; he had to restrict outdoor activities due to ultraviolet light; and he had to go to the doctor regularly for checkups. Dr. Doyle assessed 15% impairment. Dr. Doyle disagreed with Dr. Werntz's opinion that Mr. Mezzanotte belonged in Category 1 because he found mild limitations in activities of daily living.

Dr. Werntz performed a second independent medical evaluation on October 17, 2012. He again placed Mr. Mezzanotte in skin disorder Category 1 of the American Medical Association's *Guides*. Dr. Werntz assessed 9% impairment for the skin disorder and 2% for ongoing treatment for a total of 11% impairment. On August 25, 2014, the Board of Review affirmed a March 26, 2014, Office of Judges' Order which found Mr. Mezzanotte to be fully compensated by a 15% permanent partial disability award.

On July 28, 2015, Dr. Werntz performed a third independent medical evaluation. He found Mr. Mezzanotte to be at maximum medical improvement but advised that he should see a dermatologist every three to six months. He placed Mr. Mezzanotte in skin disorder Category 1 of the American Medical Association's *Guides* and found 9% impairment. He also found 2% impairment for an ongoing need of treatment. His total recommendation was again 11%.

The claims administrator found that Mr. Mezzanotte had been fully compensated by a 15% permanent partial disability award on August 18, 2015. The Office of Judges affirmed the decision on November 9, 2017. It found that Mr. Mezzanotte had previously appealed a claims administrator's decision granting a 15% permanent partial disability award. That decision was affirmed by the Office of Judges on March 26, 2014, and then by the Board of Review. After the March 26, 2014, Office of Judges' decision, Mr. Mezzanotte developed additional basal cell carcinomas. He was evaluated again by Dr. Werntz, and Dr. Werntz again found 11% impairment. The Office of Judges found that other physicians of record disagreed with Dr. Werntz's impairment assessment because Mr. Mezzanotte was ultimately granted a 15% award. However, Dr. Werntz was the only physician of record to evaluate him after the claim was reopened and no other physicians of record found impairment above 15%. Therefore, the Office of Judges found that the claims administrator's decision was proper. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on November 9, 2017.

After review, we agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. There is no indication in the record that Mr. Mezzanotte is entitled to more than a 15% permanent partial disability award.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED:**  November 2, 2018

**CONCURRED IN BY:**
Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating.